**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL C,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 6607 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(I), 423, 1381a, 1382c, about four years ago. (Administrative Record (R.) 146-153). He claimed that he became disabled as of January 30, 2009 (R. 146), due to a back injury, arthritis, and diabetes. (R. 182). Over the ensuing four years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c) on November 27, 2018. [7]. The case was then reassigned to me a couple of months later on January 10, 2019. [Dkt. #14]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

## I.

Plaintiff was born on December 17, 1962, and was 47 at the time he claims he became unable to work, and 51 at the time his insured status expired. (R. 15, 146). He has a solid work record, working consistently his entire adult life (R. 155-56), most recently as a delivery truck driver and a school bus driver. (R. 183). The delivery job was heavy work, involving delivering crates of gallons of milk weighing over one hundred pounds. (R. 42, 53). The school bus driver job was light work. (R. 53). He had leave the delivery job when he hurt his back due to all the heavy lifting. (R.45). Plaintiff can no longer stand for very long; at the most an hour and a half at a time, but often no more than fifteen minutes. (R. 50). He can't do a lot of walking. (R. 50-51). Plaintiff is 5' 11" and weighs over 300 pounds. (R. 50).

The medical record covering plaintiff's treatment in this case isn't terribly large at about 275 pages (R. 252-528), and the parties indicate that no more than a couple dozen pages are pertinent to this case [Dkt. # 21, at 4-8], so a brief summary will suffice. The record shows that, at the time plaintiff quit working, he was suffering from disc bulges at multiple locations in his lumbar spine, spondylolisthesis, and degenerative arthritis. (R. 303). Over time, he developed muscle spasms and his back impairment began to interfere with his ability to walk to the extent that his doctor certified a disability placard for his car. (R. 289, 311). He had pain radiating down his legs and then developed osteoarthritic knee pain. (R. 483-503). MRIs showed mild chondromalacia, tendinosis, and edema. (R. 377-78). Obviously, his weight exacerbated his problems. (R. 482). Most recently, he developed nerve impingement and mild arthritis in his right shoulder. (R. 367, 375). Along the way, plaintiff was treated for the pain from all these issues with multiple prescription narcotics (R. 287, 314, 414, 417, 419, 474, 476, 492, 518), and one injection after another. (R. 367, 375, 382,

387, 392, 402, 455, 460, 475, 477).

After an administrative hearing – at which plaintiff, represented by counsel, and a vocational expert testified – the ALJ determined he was not disabled. The ALJ found that plaintiff had the following severe impairments: obesity, diabetes mellitus, hypertension, spondylolisthesis, and sciatica. (R. 15). The ALJ then found that plaintiff's impairments, either singly or in combination, did not meet or equal a listed impairment assumed to be disabling in the Commissioner's listings, referring specifically to Listing 1.04 covering disorders of the spine. (R. 16).

The ALJ then determined that plaintiff could perform light work light work – which requires lifting/carrying 20 pounds occasionally and 10 pounds frequently, standing/walking about six of eight hours, sitting about six of eight hours – and could frequently climb stairs and ramps, and occasionally climb ropes and ladders. (R. 16). The ALJ then summarized the medical record (R. 17-21), first saying that she found plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not [she said] entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 17). Specifically, the ALJ cited plaintiff's daily activities and his conservative treatment as constituting that "other evidence." (R. 22). The ALJ then addressed the medical opinion evidence. She gave little weight to the limitations found by plaintiff's chiropractor, and little weight to the opinion of plaintiff's treating physician that plaintiff was severely limited in his ability to walk, saying it was conclusory, did not provide a function-by-function analysis, and was on a topic reserved for the Commissioner. (R. 22). The ALJ also discarded the two opinions from the state agency physicians who reviewed the record and determined there was not enough evidence to render a decision one way

or the other. (R. 22).

Next, the ALJ – relying on the testimony of the vocational expert – found that plaintiff was capable of performing his past work as a school bus driver because as he performed it, it was light work. (R. 23). The ALJ also made the alternate finding – again relying on the testimony of the vocational expert – that plaintiff was capable of performing other jobs that existed in significant numbers in the national economy: cashier (DOT #211.462-010, 500,000 jobs), hotel housekeeper (DOT #323.687-014, 150,000 jobs), and sales attendant (DOT #299.677-010). (R. 24). Accordingly, the ALJ concluded that the plaintiff was not disabled and was not entitled to DIB or SSI under the Act. (R. 27).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)

But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result in order to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). *See also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)("The government seems to think that if it can find enough evidence in the record to establish that the administrative law judge might have reached the same result had she considered all the evidence and evaluated it as the government's brief does, it is a case of harmless error. But the fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion.").

### III.

### A.

With all deference, we think there are some obvious problems with the ALJ's decision and that a remand is required. First, there is the ALJ's assessment of the plaintiff's allegations of the

5

limiting effects of his symptoms. The ALJ rejected the extent of plaintiff's complaints based on the medical evidence, his daily activities, and his course of treatment. In all three facets, the ALJ either erred or failed to adequately build a logical bridge to allow a reviewing court to follow the path of her reasoning.

We begin with the most obvious error. Early in the case, after initial review of the record, the court pointed out to the Commissioner that the ALJ noted that the plaintiff "is able to do light chores and cut the lawn, with increased pain the next day" and that plaintiff loaded a trailer one time and also suffered increased pain, and then found that "[t]hese activities are generally consistent with limitations to a range of light work." (R. 21). As the court noted, and it bears repeating, that simply is not so. *See, e.g.*, *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010). It is obvious – or should be – that mowing the lawn one day out of a month with breaks over a two-hour period is not consistent with standing and walking for up to six hours every workday. Neither, of course, are sporadic chores around the house. And if the ALJ thought they were indicative of what the plaintiff could do every day at work, why did she find he could frequently climb stairs –meaning, again, up to two-thirds of each workday – when the plaintiff said he could not do the laundry because he could no longer negotiate stairs? (R . 191).

The Commissioner has sought to rehabilitate the ALJ's decision by arguing that:

> The ALJ did not simply equate plaintiff's activities such as doing light chores . . . to an ability to perform light work; rather she found that the alleged symptoms were not supported by the record evidence of these activities. . . . There is a critical difference between an ALJ improperly saying, "The claimant can perform this range of activities; therefore []he can work," *see Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); and an ALJ reasonably saying, "The claimant can perform this range of activities, therefore []he can do more than []he claims, and is not credible." *Pepper*

6

*v. Colvin*, 712 [F.3d at 369 [(7th Cir. )].

[Dkt. #20, at 2; #22, at 7-8].

The argument is unpersuasive. The ALJ could not have been more clear; she specifically said: "These activities are consistent with limitations to a range of light work." (R. 21). If that is not equating the activities to a capacity for light work, it is unfathomable what else it could possibly mean. The Commissioner is not only supplying reasoning for the ALJ's decision that the ALJ did not employ – thereby violating the *Chenery* doctrine, *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018); *Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018) – the Commissioner is also seemingly excising the offending reasoning. Nothing more need be said on this point other than a remand is clearly warranted.

Next, there is plaintiff's treatment. The ALJ said plaintiff's treatment and prescribed medication were conservative. (R. 21-22). Even the Commissioner seems to concede that the ALJ was wrong about treatment being conservative. [Dkt. #20, at 2-3, #22, at 8-9]. That should have been obvious. Again, plaintiff was consistently prescribed strong, narcotic, pain medications, and had to return, time and again, for injections. By any standards this would appear not to be "conservative" treatment, and it's certainly not "conservative medication." *Compare Huber v. Berryhill*, 732 F. App'x 451, 456 (7th Cir. 2018)("The absence of recommendations for back surgery or narcotics does not suggest that [plaintiffs] treatment was necessarily conservative."). Moreover, the Seventh Circuit has made clear that a course of treatment consisting of injections and narcotics should bolster, rather than detract, from the credibility of allegations of pain. *See Plessinger v. Berryhill*, 900 F .3d 909, 916 (7th Cir. 2018); *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004). Here, narcotics and injections inexplicably worked to plaintiff's detriment.

7

Apparently, the explanation is that the medication and injections worked, as the ALJ and the Commissioner maintain that examinations were "generally normal" with medication. (R. 21); [Dkt. # 20, at 3, #22, at 8]. That's an exaggeration. There's nothing "generally normal" about osteoarthritis, bulging discs, shoulder nerve impingement, or chondromalacia – especially when dependent on medication. Moreover, plaintiff specifically said he had good days and bad, about half and half, and the couple of examples of normal strength findings in August 2016 and April 2017 (R. 22) are certainly offset by *report after report* of painful range of motion, muscle spasms, and problems walking. *See, e.g.,* R. 307, 311, 312, 314, 315, 317, 339, 355, 382, 384). So, the error here follows along the lines of thinking that mowing the law once or twice a month equals working on one's feet for most of the day, five days per week.

As in *Lambert v. Berryhill*, 896 F.3d 777 (7th Cir. 2018), "none of [plaintiff's] physicians interpreted [normal strength findings] as inconsistent with his reports of recurrent and worsening pain and functional limitations." 896 F.3d at 777. "[Plaintiff's] physicians continued to treat his pain." *Id.* And while plaintiff's course of treatment may have reduced his pain from time to time, shouldn't it mean something for the credibility of his allegations of pain that on top of narcotic pain killers, he *also* needed frequent injections and chiropractic adjustments.

This leads us to another problem with the ALJ's decision: her treatment of the plaintiff's obesity. Weighing over 300 pounds, with a BMI over 40, plaintiff is morbidly obese. While the ALJ acknowledged that plaintiff's obesity was a severe impairment, it's not clear it entered into her analysis. Because the ALJ found that plaintiff's obesity significantly limited his ability to engage in work activity, she was required to discuss "any functional limitations resulting from the obesity" when formulating her RFC finding. *Pepper v. Colvin*, 712 F.3d 351, 364 (7th Cir. 2013). But, there

is no discussion here; all the ALJ said was "[i]n making this determination, I have considered the claimant's obesity in combination with all the other impairments as required . . . ." (R. 22). But that unexplained *ipse dixit* is uninformative and insufficient.[2]

Sometimes the fact that an ALJ considered a claimant's obesity might be apparent from her decision despite a lack of discussion, but that's not the case here. "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir.2003). In addition to severe spondylolisthesis and sciatica (R. 15), the plaintiff suffers from knee and shoulder impairments which the ALJ apparently felt were nonsevere. The knee and shoulder impairments were both severe enough that doctors gave plaintiff injections for pain, but even if they were, in fact, mild, the ALJ had to consider the exacerbating effect morbid obesity would have on

---

[2] This type of error may be harmless when the ALJ's RFC finding is based on limitations identified by doctors who specifically noted obesity as a contributing factor to the exacerbation of other impairments. *Pepper*, 712 F.3d at 365; *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir.2006). But, in this case, the ALJ rejected every medical opinion in the record, which may have created an evidentiary deficit leading the ALJ to arrive at her own medical conclusions. *See, e.g., Chase v. Astrue*, 458 F. App'x 553, 556 (7th Cir. 2012); *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010). Moreover, the reasoning the ALJ advanced for rejecting the opinion of the plaintiff's physician that plaintiff is severely limited in his ability to walk is flawed. The ALJ's two reasons for rejecting the opinion were that disability is a determination reserved for the Commissioner and that the doctor failed to provide a function-by-function analysis.

As for the former, plaintiff's doctor didn't say he was unable to work, he said he was severely limited in his ability to walk. As such, the ALJ couldn't just simply reject the opinion out of hand. *See Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013)("Although the ALJ does 'not give any special significance' to such opinions, he still must consider 'opinions from medical sources" in determining the claimant's residual functional capacity.'"); *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016)("Thus, the ALJ did not have to accept [the doctor's] October 2012 conclusory statement that Loveless could not work. The ALJ needed only to weigh Dr. Cusack's assessments about the nature and severity of Loveless's impairments . . . ."). As for the latter, it is not clear what the ALJ wanted, as the doctor found one functional limitation that, if accepted, would completely rule out the ALJ's RFC finding.

9

them. *See Spicher v. Berryhill*, 898 F.3d 754, 759 (7th Cir. 2018)(ALJ improperly failed to consider the permanent but mild effects a humerus fracture had in combination with the permanent and severe effect of plaintiff's obesity); *Stevens v. Berryhill*, 888 F.3d 323, 328 (7th Cir. 2019)(combined effect of obesity with other impairments may be worse than those same impairments without the addition of obesity). Yet, the ALJ found that plaintiff could perform work requiring him to be on his feet most of every day, five days a week.

While the court applies a common-sense reading to the entirety of an ALJ's decision, *Winsted v. Berryhill*, 915 F.3d 466, 472–73 (7th Cir. 2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000), common sense undercuts the ALJ's decision here.[3] As the Seventh Circuit has said, "[i]t is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40." *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011). To make matters worse, the ALJ not only found that plaintiff could be on his feet most of every day, but that he could climb stairs most of the day as well. And finally, there is the ALJ's further finding that plaintiff could also climb ladders, ropes, and scaffold up to

---

[3] Common sense and human experience have a role to play in all litigation. *See generally New Jersey v. T.L.O.*, 469 U.S. 325 (1985); *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 270 (7th Cir. 2006)("[J]udges ..., are allowed to use their common sense and background knowledge to draw inferences from what the evidence shows."); *Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 532 (9th Cir. 2016); *F.T.C. v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 150 (D.C. Cir. 2015); *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1 (1st Cir. 2011); *Greenstone v. Cambex Corp.*, 975 F.2d 22, 26 (1st Cir. 1992) (Breyer, C.J.); Posner, How Judges Think, 116 (Harvard University Press 2008);

Social Security litigation is not an exception to this most basic of rules. *See generally Castile v. Astrue*, 617 F.3d 923, 930 (7th Cir. 2010); *Simila v. Astrue*, 573 F.3d 503, 518 (7th Cir. 2009)(plaintiff's position rejected as it "downplay[ed] ... common sense."); *Castile v. Astrue*, 617 F.3d 923, 930 (7th Cir. 2010); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005); *Joe R. v. Berryhill*, 363 F. Supp. 3d 876, 884 (N.D. Ill. 2019).

two-thirds of every day. (R. 16). That's the kind of finding that calls to mind the Seventh Circuit's aversion to the even less demanding RFC determination in *Goins v. Colvin*, 764 F.3d 677, 682 (7th Cir. 2014):

> If we thought the Social Security Administration and its lawyers had a sense of humor, we would think it a joke for its lawyer to have said in its brief that the administrative law judge "accommodated [the plaintiff's] obesity by providing that she could never [be required as part of her work duties to] climb ladders, ropes, or scaffolds, and could only occasionally climb ramps or stairs, balance, kneel, crawl, stoop, and/or crouch." (The administrative law judge must have forgotten that the primary consulting physician thought the plaintiff can crawl and crouch at work.) Does the SSA think that if only the plaintiff were thin, she could climb ropes? And that at her present weight and with her present symptoms she can, even occasionally, crawl, stoop, and crouch?

764 F.3d at 682.

It is difficult to imagine a more invalid finding than the one made here, namely that a 51-year-old, morbidly obese man, with bad knees and a severe back impairment could nonetheless climb stairs up to 6 hours a day, or even occasionally haul himself up a rope with his bad shoulder. Such a finding defies not only the record and the regulations, but common sense as well.[4]

---

[4] It would certainly have been more commonsensical to have found that plaintiff was limited to sedentary work, but the ALJ still would have had to discuss plaintiff's obesity in combination with his other impairments and build the required logical bridge. But there's an elephant in the room: under the Commissioner's regulations, if the 51-year old plaintiff is able to do sedentary work but no more, and has no transferable skills, he would be disabled under the Medical-Vocational Guidelines. 20 CFR Pt. 404, Subpt. P, App. 2, Sec. 201.00, Table No. 1.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment [Dkt. #15] is granted and this matter is remanded to the Commissioner.[5]

**ENTERED:** /s/ Jeffrey Cole
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 10/2/19

---

[5] Plaintiff asks that the ALJ's decision be reversed and an award of benefits ordered. "It remains true that an award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Allord v. Astrue*, 631 F.3d 411, 417 (7th Cir. 2011). As the remand here comes under the Seventh Circuit's "logical bridge" requirement, an award of benefits is not appropriate without further administrative proceedings.